UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERRY JOHNS,<br><br>                                    Petitioner,<br><br>                    v.<br><br>L.E. SCRIBNER, Warden,<br><br>                                    Respondent. | Civil No.      07cv0692-BTM (CAB)<br><br>**REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

Gerry Johns, a state prisoner proceeding *pro se,* has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, raising several grounds for relief based on denial of his parole.  The Court has considered the Petition, Respondent's Answer and Memorandum of Points and Authorities, and all supporting documents submitted by the parties.  Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **RECOMMENDS** that the Petition be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

## I.  BACKGROUND

On February 21, 1981, Petitioner and James Randall approached a car as it was driving through the drive-thru of a Jack-in-the-Box.  (Lodgment 3, Subsequent Parole Consideration Hearing Transcript, at 6-7.)  Randall was armed with a shotgun, and the two demanded money from the people inside the car.  (*Id.* at 7.)  Randall discharged the shotgun, causing a fatal wound in the head to Cecilia Sandoval.  (*Id.*)  Petitioner was convicted of second degree murder committed while armed with a deadly weapon and two counts of robbery and was sentenced to 21 years to life in state prison.  (Lodgments 1&2.)

1    Following Petitioner's third parole suitability hearing on November 1, 2005, the Board of Parole

2    Hearings ("Board") denied him parole. (Lodgment 3, at 44.) Petitioner challenged the Board's decision

3    in the state superior court in a petition for writ of habeas corpus filed on March 8, 2006. (Lodgment 5.)

4    The petition was denied on June 7, 2006. (Lodgment 6.) On July 13, 2006, Petitioner filed a petition for

5    writ of habeas corpus in the state appellate court. (Lodgment 7.) That petition was denied on July 26,

6    2006. (Lodgment 8.) On August 25, 2006, Petitioner filed a petition for writ of habeas corpus in the

7    state supreme court. (Lodgment 9.) The petition was denied on February 21, 2007. (Lodgment 10.)

8    Petitioner filed the instant federal habeas petition on April 4, 2007 in the Central District of

9    California. The Petition was transferred to this district on April 17, 2007. [Doc. No. 1.] In his federal

10   Petition, Petitioner argues that the Board violated his right to a fair and impartial parole consideration

11   hearing, deprived him of his liberty interest in parole, abused its discretion, and failed to weigh the

12   favorable aspects of his parole suitability. (Pet. 5-6.)[1]

13                                         **II.  DISCUSSION**

14   **A.  Scope of Review**

15   Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal

16   habeas corpus claims:

17          The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
18   entertain an application for a writ of habeas corpus in behalf of a person in custody
     pursuant to the judgment of a State court only on the ground that he is in custody *in
19   violation of the Constitution or laws or treaties of the United States.*

20   28 U.S.C. § 2254(a) (1994) (emphasis added).

21   The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus

22   petitions filed after 1996. *Lindh v. Murphy*, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d)

23   reads:

24          (d) An application for a writ of habeas corpus on behalf of a person in custody
     pursuant to the judgment of a State court shall not be granted with respect to any claim
25   that was adjudicated on the merits in State court proceedings unless the adjudication of
     the claim–
26
            (1) resulted in a decision that was contrary to, or involved an
27   unreasonable application of, clearly established Federal law, as determined

28

_____

[1]  Citations to the Petition refer to page numbers assigned by CM/ECF.

07cv0692

by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C.A. § 2254(d).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The Supreme Court interprets § 2254(d)(1) as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decided a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, this Court "looks through" to the underlying appellate court decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record "to determine whether the state court clearly erred in its application of controlling federal law."  *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer,* 538 U.S. at 75-76).  However, a state court need not cite U.S. Supreme Court precedent when resolving a habeas corpus claim.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  As long as neither the reasoning nor the result of the state court decision contradicts U.S. Supreme Court precedent, the state court decision will not be "contrary to" clearly established federal law.  *Id.*

**B. Analysis**

Petitioner asserts four grounds for relief challenging the Board's decision to deny him parole during his third parole consideration hearing on November 1, 2005.  Petitioner asserts that the Board violated his right to a fair and impartial parole consideration hearing, deprived him of his liberty interest in parole, abused its discretion, and failed to weigh the favorable aspects of his parole suitability.  (Pet. 5-6.)  In essence, Petitioner is arguing that the Board's denial of parole violated his due process rights.  Respondent argues the state court's denial of Petitioner's due process claim was neither contrary to, nor

07cv0692

1   an unreasonable application of, clearly established Supreme Court law.  Under clearly established federal

2   law, Petitioner's due process claim is analyzed in two parts.  First, the Court must determine whether

3   Petitioner has a liberty interest of which he has been deprived.  *Ky. Dep't of Corr. v. Thompson*, 490

4   U.S. 454, 460 (1989).  If so, the Court must determine whether the procedure used to deprive him of that

5   liberty interest was constitutionally sufficient.  *Id.*

6          California's parole scheme, codified in California Penal Code section 3041, vests all "prisoners

7   whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in

8   the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the

9   Due Process Clause."  *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (citing *Sass v. Cal. Bd. of*

10  *Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir.

11  2003); *McQuillon v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002)); *see also Duhaime v. Ducharme*, 200

12  F.3d 597, 600 (9th Cir. 2000) (finding that Ninth Circuit "cases may be persuasive authority for purposes

13  of determining whether a particular state court decision is an 'unreasonable application' of Supreme

14  Court law, and also may help us determine what law is 'clearly established'").  Having determined that

15  Petitioner does have a protected liberty interest in a parole date, the Court must proceed to the second,

16  more contentious prong of the due process analysis, whether the procedure afforded Petitioner was

17  adequate.  *Thompson*, 490 U.S. at 460.

18         In *Sass*, the Ninth Circuit concluded that the Supreme Court's decision in *Superintendent, Mass.*

19  *Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985), which held that "revocation of good time [credits] does not

20  comport with 'the minimum requirements of procedural due process,' unless the findings of the prison

21  disciplinary board are supported by some evidence in the record," applies with equal force to the denial

22  of parole "because both directly affect the duration of the prison term."  *See Sass*, 461 F.3d at 1128-29

23  (quoting *Jancsek v. Or. Bd. of Parole*, 833 F.3d 1389, 1390 (9th Cir. 1987).  Indeed, the Court concluded

24  that the "some evidence" standard was clearly established U.S. Supreme Court law for AEDPA

25  purposes.  *See Sass*, 461 F.3d at 1129; *see also Duhaime*, 200 F.3d at 600.

26         The relevant question is whether there is any evidence in the record that could support the

27  conclusion reached by the Board.  *See Hill*, 472 U.S. at 455.  An examination of the entire record is not

28  required, neither is an independent assessment of the credibility of witnesses nor weighing of the

1   evidence. *See id.* Additionally, the evidence underlying the Board's decision must have some indicia of

2   reliability. *McQuillion*, 306 F.3d at 904; *Jancsek*, 833 F.2d at 1390). Accordingly, if the Board's

3   determination of parole suitability is to satisfy due process, there must be some evidence, with some

4   indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005);

5   *McQuillion*, 306 F.3d at 904.

6       When assessing whether a state parole board's suitability determination was supported by "some

7   evidence," the court's analysis is framed by the statutes and regulations governing parole suitability

8   determinations in the relevant state. *Irons*, 505 F.3d at 850. Accordingly, in California, the court must

9   look to California law to determine the findings that are necessary to deem a prisoner unsuitable for

10  parole, and then must review the record in order to determine whether the state court decision holding

11  that these findings were supported by "some evidence" constituted an unreasonable application of the

12  "some evidence" principle articulated in *Hill*. *Id.*; *Irons*, 505 F.3d at 852-53 (finding state court did not

13  unreasonably apply "some evidence" standard to uphold parole suitability denial where there was some

14  evidence at the time of the hearing to support a finding that the prisoner would present a danger to

15  society based on the nature of the commitment offense under the applicable parole regulations).

16      California prescribes indeterminate sentences for non-capital murders: 25 years to life for first

17  degree murder and 15 years to life for second degree murder. Cal. Penal Code § 190. One year prior to

18  the expiration of a prisoner's minimum sentence, a Board panel meets with the inmate and "set(s) a

19  release date unless it determines that the gravity of current convicted offense or offenses, or the timing

20  and gravity of current or past convicted offense or offenses, is such that consideration of the public

21  safety requires a more lengthy incarceration." Cal. Penal Code § 3401(a). Regardless of the length of

22  time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the

23  panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal.

24  Code Regs. § 2402(a).

25      **1.    The Board's decision and the superior court's decision**

26      The record shows that on November 1, 2005, Petitioner appeared with counsel before the Board

27  for his third parole consideration hearing. (Lodgment 3.) Petitioner waived hearing his rights, because

28  he indicated he had gone over them with his attorney. (*Id.* at 2-3.) The commissioner informed

07cv0692

1   Petitioner that he had the right to a fair and impartial panel, and Petitioner indicated he had no objections

2   to the panel. (*Id.* at 3.) The panel then discussed with Petitioner the facts of the crime, Petitioner's

3   criminal and social history, his post conviction factors, and his parole plans. (*Id.* at 4-23, 26-28.) The

4   panel also reviewed Petitioner's psychological evaluation from 2003. (*Id.* at 24.) In closing, the panel

5   heard final statements from the deputy district attorney, Petitioner's attorney and Petitioner. (*Id.* at 33-

6   39.)

7        After deliberations, the Board concluded that Petitioner was "not suitable for parole and would

8   pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (*Id.* at

9   41.) Specifically, the Board found the crime was carried out in an especially cruel and callous manner,

10  multiple victims were attacked, one was killed, and the offense was carried out in a manner that

11  "demonstrates exceptional callous disregard for human suffering." Further, the motive for the crime was

12  inexplicable. The Board also noted that previous to this incident, Petitioner had inflicted or attempted to

13  inflict serious injuries on others. (*Id.*) Before the commitment offense, Petitioner had been sentenced to

14  the California Youth Authority ("CYA") and was convicted of the commitment offense while he was on

15  parole from the CYA. (*Id.* at 42; Lodgment 11, Board of Prison Terms Life Prisoner Evaluation, April

16  21, 2003, at 3.) The Board noted that Petitioner had had 12 128s[2] and 27 115s[3], with the last one being

17  in 1995. (Lodgment 3, at 42.) The Board noted that the San Bernardino County Sheriff's Department

18  opposed a finding of parole suitability. The Board concluded that Petitioner's gains were recent and he

19  needed to demonstrate an ability to maintain gains over an extended period of time. (*Id.*) The Board

20  recommended that Petitioner become and remain disciplinary free, work toward reducing his custody

21  level so that he could get more program opportunities, upgrade his vocational ability, and continue his

22  self-help programs. (*Id.* at 43.) The Board denied Petitioner parole for three years. (*Id.* at 44.)

23       The superior court upheld the decision of the Board (lodgment 6), and the state appellate and

24  supreme courts summarily affirmed (lodgments 7&8). Because the California Supreme Court issued a

25  summary denial, this Court must "look through" to the last reasoned state court decision which

26  addressed the claim on the merits. *Ylst*, 501 U.S. at 801-06. In this case, that is the superior court's

27

28
     [2] Form 128 is used to report minor acts of non-conformance to rules.

     [3] Form 115 is used to report rules violations.

07cv0692

1  denial.  The superior court found that there was "some evidence" which lead to the Board's finding of

2  unsuitability for parole.  (Lodgment 6, at 3.)

3       The state court's rejection of this claim was not contrary to, or an unreasonable application of,

4  the *Hill* standard, nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d).

5  The Board's November 1, 2005 decision to deny Petitioner parole after his third parole consideration

6  hearing is supported by some evidence in the record and that evidence bears some indicia of reliability.

7  *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir. 1987), *cert. denied*, 484 U.S. 1017 (1988);

8  *see, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and

9  psychiatric reports); *Biggs v. Terhune*, 334 F.3d 910, 919 (9th. Cir. 2003) (upholding denial of parole

10  based solely on gravity of offense and conduct prior to imprisonment); *Morales v. Cal. Dep't of Corr.*,

11  16 F.3d 1001, 1005 (9th Cir. 1994) (upholding denial of parole based on criminal history, cruel nature of

12  offense, and need for further psychiatric treatment).  The inquiry under *Hill* is simply "whether there is

13  any evidence in the record that could support the conclusion reached by the [Board]."  *Hill*, 472 U.S. at

14  455-56.  As discussed below, the Court finds there is.

15

16       **2.     Petitioner fails to show that he was denied a fair and impartial parole consideration
          hearing**

17       Petitioner contends that the Board violated his right to a fair and impartial parole consideration

18  hearing.  A prisoner is entitled to have his release date considered by a parole board that is free from bias

19  or prejudice.  *O'Bremski v. Maas*, 915 F.2d 418, 422 (9th Cir. 1990) (citing *Schweiker v. McClure*, 456

20  U.S. 188, 195 (1982); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); and *Sellars v. Procunier*, 641

21  F.2d 1295, 1303 (9th Cir. 1981)).  Here, Petitioner fails to offer any evidence in support of his assertion

22  that the panel at his parole consideration hearing was bias in any way.  Furthermore, Petitioner and his

23  counsel declined to object to the panel at the hearing.  (Lodgment 3, at 3.)  He may not now attack the

24  partiality of the Board simply because he received an unfavorable decision.  Petitioner asserts that the

25  Board had pre-determined the outcome of the hearing and therefore misstated facts and declined to

26  consider other facts.  (Pet. 14.)  Petitioner, however, does not specify what facts the Board misstated or

27  what facts they did not consider.  To the contrary, it appears from the record that the Board went over in

28  detail all the facts of Petitioner's case, and Petitioner had an opportunity to participate throughout the

1  hearing.

2    The Board first reviewed Petitioner's family background. His mother is a Baptist minister and

3  his father is self-employed. (Lodgment 3, at 4.) His younger brother is a homicide detective, and his

4  younger sister is a correctional officer. (*Id.*) The Board noted that Petitioner had been married since

5  1997, and Petitioner credited his wife for many of the changes he had made in his life. (*Id.* at 5.)

6  Petitioner stated his family was the basis of support for him. The Board also noted, however, that

7  Petitioner reported marijuana use from age 15 and alcohol use from age 16 or 17. Petitioner developed a

8  juvenile record during this time, which included two petitions for vehicle theft and one for burglary.

9  (*Id.*) In 1978, Petitioner was involved in an armed home invasion robbery with another person, James

10  Randall, and was sent to the California Youth Authority. (*Id.* at 6.) In that incident, Randall fired three

11  shots, one of which struck the victim in the arm. (*Id.* at 9.) Petitioner was required to stay away from

12  Randall, but he did not abide by that requirement, because he was involved in other matters with Randall

13  after that. (*Id.* at 6.) In one of the other incidents, a 71-year-old woman refused to open the door of her

14  home, and Petitioner and Randall kicked in the door and demanded money. (*Id.* at 9.) Randall beat the

15  woman around the face and shot her in the chin, and the bullet lodged in her shoulder. (*Id.*)

16    The Board also discussed the facts of the commitment offense, when Petitioner and Randall

17  approached a car in the Jack-in-the-Box drive-thru and Randall fatally shot Cecilia Sandoval. (*Id.* at 6-

18  7.) Petitioner denied being present when Randall fired the shotgun. (*Id.* at 8.) Petitioner claimed he was

19  walking away from the car at the time. (*Id.*) When asked what he had to say, Petitioner stated he was

20  young at the time of the commitment offense (20 years old), inconsiderate of others, selfish and had a

21  low self-esteem. (*Id.* at 10.)

22    The Board then reviewed Petitioner's programming and psychological reports. (*Id.* at 12.) The

23  commissioner noted that Petitioner currently had a custody level of 169 points, which was considered

24  bad, but Petitioner had brought them down from 260 points a year ago. (*Id.* at 13-14.) The

25  commissioner noted most of Petitioner's problems came in his early years in prison. (*Id.* at 14.) He had

26  a total of 27 115 disciplinary reports, but the last 115 was in 1995. (*Id.*) Petitioner noted that his

27  improvements came about, because during this time, he was involved in a number of self-help programs

28  and had met his wife. (*Id.* at 15.) Petitioner also completed three vocation certificates, including

07cv0692

1  upholstering in 1997 and data processing in 2003.  (*Id.* at 15-16.)  Petitioner also completed a number of

2  computer certificates, including PowerPoint, Microsoft Access, Microsoft Word and Microsoft Labels.

3  (*Id.* at 16.)  Petitioner also got his GED[4] in 1991.  (*Id.*)  Petitioner also had a number of other certificates,

4  including criminal thinking and life management.  (*Id.* at 17-21.)  Petitioner noted that he had been

5  working consistently for 14 years.  (*Id.* at 22.)  Petitioner indicated that, if paroled, he planned to work in

6  his father's business, and he had four different residences where he could live, depending on the

7  requirements of his parole.  (*Id.* at 26-28.)

8          Petitioner and his counsel had ample opportunity to present evidence at the hearing.  Only after

9  an extensive hearing during which the Board reviewed Petitioner's commitment offense, his juvenile

10 record, his prior drug use, his prison behavior, the vocational training he obtained in prison, prison

11 psychiatric reports, recommendations, the district attorney's statement in opposition to parole, his

12 attorney's statement, and Petitioner's own statement, did the Board deny Petitioner parole for three

13 years.  As such, Petitioner's contention that the Board misstated facts or did not consider facts is not

14 supported by the record.

15          **3.        Petitioner fails to show he was deprived of his liberty interest in parole**

16          Petitioner contends the Board deprived him of his liberty interest in parole, because it

17 disregarded the statutory mandate and aggravated his sentence by using factors that were never proven to

18 be true at trial.  (Pet. 14.)  Respondent argues that California law allows the Board to consider evidence

19 that would have justified a higher degree of punishment than that of the commitment offense.  (Answer

20 11.)  A claim challenging the Board's decision or the state court's opinion on state law grounds is not

21 cognizable on federal habeas.  *See* 28 U.S.C.A. § 2254(a) ("a district court shall entertain an application

22 for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only

23 on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

24 States."); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that federal habeas relief is not

25 available merely for an alleged error in the interpretation or application of state law).  Thus, to the extent

26 Petitioner is challenging the state court's interpretation of state law, it is not cognizable on federal

27 habeas.  To the extent Petitioner contends a federal due process violation occurred because the

28

---

[4]  General Equivalency Degree, equivalent to a completing high school.

07cv0692

1   preponderance of the evidence weighed in favor of his suitability for parole, he is not entitled to federal

2   habeas relief because, as set forth above, there was some evidence to support the Board's decision.

3   Therefore, the state superior court opinion was neither contrary to, nor involved an unreasonable

4   application of, clearly established federal law.  Even to the extent that Petitioner contends the state

5   court's decision was based on an unreasonable determination of the facts, Petitioner has not

6   demonstrated that the factual findings upon which the state court's adjudication of his claims actually

7   rest are objectively unreasonable.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

8       **4.**     **Petitioner fails to show that the Board's decision had no indicia of reliability**

9       Petitioner argues that the Board abused its discretion, because it failed to point to evidence

10  bearing on an indicia of reliability to support their reasons for denying him parole.  A relevant factor in

11  determining whether the evidence underlying the Board's decision has some indicia of reliability is

12  whether the prisoner was afforded an opportunity to appear before, and present evidence to, the Board.

13  *See Pedro*, 825 F.2d at 1399.  When applying these standards, the court may look to whether a prisoner's

14  allegations of any violations by the Board are of a "minor" nature, whether they are supported in fact,

15  whether the prisoner had an opportunity to participate, and whether he took full advantage of that

16  opportunity.  *See Morales*, 16 F.3d at 1005; *see also McQuillion*, 306 F.3d at 900 (acknowledging

17  general right to call witnesses at parole rescission hearing).  Here, the hearing transcript reveals that

18  Petitioner was given every opportunity to participate and speak on his own behalf.  In fact, Petitioner

19  was given the last opportunity to speak before the Board began its deliberations, so he could address all

20  the evidence presented.  (Lodgment 3, at 37-39.)  Petitioner has provided no support for his contention

21  that the Board's decision had no indicia of reliability, nor is his contention supported by the record.

22
23      **5.**     **Petitioner fails to show that the Board did not take into account the favorable factors supporting parole**

24      Petitioner also contends that the Board was required to take into account the favorable factors

25  supporting parole, but the Board instead concluded the favorable factors were recent.  (Pet. 14.)  The

26  superior court determined that while the Board's decision did not reflect the weighing process of the

27  Board, *In re Rosenkrantz*, 29 Cal. 4th 616 (Cal. 2002) clearly stated that the Board need not explain its

28  decision or the precise manner in which the specific facts were relevant to parole suitability.  (Lodgment

07cv0692

1  6, at 3.)  In any case, even though the Board did not specifically weigh positive and negative factors

2  during its decision, it did go over in detail the positive factors supporting parole during the parole

3  hearing.  First, the Board noted that Petitioner had a supportive family.  (Lodgment 3, at 4-5.)  The

4  Board noted that while Petitioner had a number of disciplinary infractions, most of his problems came in

5  his first years in prison.  (*Id.* at 14.)  The Board also discussed Petitioner's various vocational training,

6  computer certificates, and the courses he took in criminal thinking and life management.  (*Id.* at 16-21.)

7  The Board also noted that Petitioner was currently working and had been consistently working for 14

8  years.  (*Id.* at 22.)  The Board also took into consideration that Petitioner had employment lined up if he

9  were to be released and he had four different residences where he could live.  (*Id.* at 26-28.)

10        On the other hand, the Board review Petitioner's record, starting from when he was a juvenile

11  and noted that he had been involved in theft and burglary from a young age.  (*Id.* at 5.)  He also became

12  involved with James Randall and participated in an armed robbery with him, which resulted in Petitioner

13  being sent to the California Youth Authority.  (*Id.* at 5-6.)  As a condition of his release from CYA,

14  Petitioner was not to get involved with Randall again, but he nevertheless continued to associate with

15  Randall and participated in the commitment offense with him.  (*Id.* at 6.)  The Board found Petitioner

16  had a history of unstable relationships with others.  (*Id.* at 43.)  In addition, Petitioner had numerous

17  disciplinary problems while in prison.  (*Id.*)  While he had made improvements, the Board concluded

18  Petitioner needed to demonstrate that he could maintain those improvements over an extended period of

19  time.  (*Id.* at 42.)

20        Petitioner had a juvenile record in the 1970s.  He was then was convicted for the commitment

21  offense and sentenced to prison in 1981.  During the first 14 years of his time in prison, between 1981

22  and 1995, he had 27 rules violations.  The parole consideration hearing occurred in 2005, so Petitioner

23  had been making improvements for the last 10 years.  Considering that Petitioner had discipline issues

24  from a young age and after he entered state prison, it was reasonable that the Board would want to see

25  the improvements maintained for longer than 10 years.  In fact, the commissioner told Petitioner,

26  "Basically, what's hurting you is your points.  And you're getting them down like I told you.  You got

27  them down 100 points.  That's a lot and you gotta continue to get them down.  I can't speak for the

28  Board of course, but I think you'll become a contender for release after you're down under three digits."

07cv0692

1    (*Id.* at 43-44.)  It appears from the record that the Board did take into account the factors favoring parole

2    in making its decision.

3    **IV.  CONCLUSION**

4         After thorough review of the record in this matter and based upon the above discussion, this

5    Court finds that the state court's rejection of Petitioner's due process claim was not contrary to, or an

6    unreasonable application of, clearly established federal law, nor based on an unreasonable determination

7    of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  As such, this Court

8    **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** and this action be

9    **DISMISSED WITH PREJUDICE**.  This report and recommendation of the undersigned Magistrate

10    Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. §

11    636(b)(1).

12         **IT IS ORDERED** that no later than __**August 11, 2008**__, any party to this action may file written

13    objections with the Court and serve a copy on all parties.  The document should be captioned

14    "Objections to Report and Recommendation."

15         **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and

16    served on all parties no later than __**ten days after being served with the objections**__.  The parties are

17    advised that failure to file objections within the specified time may waive the right to raise those

18    objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

19

20    DATED:  July 7, 2008

21    _____

22    **CATHY ANN BENCIVENGO**
      United States Magistrate Judge

23

24

25

26

27

28

07cv0692